386 April 27, 2017 No. 24

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

RUSSELL ALLEN BAUGHMAN,
*Respondent on Review.*

(CC 111306; CA A152531; SC S064086)

On review from the Court of Appeals.*

Argued and submitted November 14, 2016.

Doug M. Petrina, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Kristin A. Carveth, Deputy Public Defender, Salem, argued the cause for respondent on review. Eric Johansen, Deputy Public Defender, filed the brief. Also on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Brewer, and Nakamoto, Justices, and Baldwin, Senior Justice, Justice pro tempore.**

WALTERS, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings, consistently with this opinion.

_____
\* On appeal from a judgment of the Clatsop County Circuit Court, Cindee S. Matyas, Judge. 276 Or App 754, 369 P3d 423 (2016).

\*\* Flynn, J., did not participate in the consideration or decision of this case.

**WALTERS, J.**

In this case we explain that, in a criminal action, when the state proffers evidence of uncharged acts, either to prove a defendant's propensity to commit charged crimes under OEC 404(4),[1] or for a nonpropensity purpose under OEC 404(3),[2] and a defendant objects to the admission of that evidence, the trial court must conduct balancing under OEC 403,[3] according to its terms, to determine whether the probative value of the challenged evidence is substantially outweighed by the danger of unfair prejudice. We affirm the decision of the Court of Appeals, *State v. Baughman*, 276 Or App 754, 369 P3d 423 (2016), reverse the trial court's judgment of conviction, and remand this case to the trial court for further proceedings.

## I.   BACKGROUND

Defendant was charged with 12 counts of child sexual abuse. The state alleged that defendant had abused the victim, B, in Clatsop County.

Before trial, the state filed a motion to permit it to introduce evidence that defendant also had sexually abused another child, A. The state argued that that evidence was relevant for a number of nonpropensity purposes under

---

[1] OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) [OEC 406 through 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

[2] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[3] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

OEC 404(3)—to establish defendant's intent, motive, common plan or scheme, and the absence of mistake or accident. Defendant countered that, because his defense was not mistaken identity or lack of intent, but, instead, that the charged acts of abuse had not occurred, the proffered evidence was not relevant for a nonpropensity purpose. Further, defendant argued, even if the evidence was minimally relevant, its probative value was substantially outweighed by the danger of unfair prejudice and it was therefore inadmissible under OEC 403.

Both A and B testified at the hearing on the state's motion. B testified that, when she was about five years old, defendant had entered into a relationship with her mother and moved into their family home in Umatilla County. Defendant began to sexually abuse B when she was seven years old and still living in Umatilla County. The abuse began with sexual touching, and, by the time B was 12 and living in Clatsop County, defendant had begun to abuse her "over and over again[,] repeatedly." B testified that defendant had touched her sexually, forced her to touch him sexually, and, in Clatsop County, repeatedly had forced her to have intercourse with him.

A, the second child, testified that defendant's abuse of her also had occurred while defendant was in a relationship with her mother and living with them in their family home. A was in fifth grade when the abuse began. The abuse, including the sexual touching of both defendant's and A's sexual or intimate parts, had continued until she was 13 or 14 years old.

After the hearing, the trial court issued a letter opinion. The court agreed with the state that defendant's abuse of A was relevant to prove defendant's "identity, intent and to bolster the credibility of the victim," and was admissible under OEC 404(3). With respect to the issue of intent, the court explained that it had conducted an analysis under *State v. Johns*, 301 Or 535, 555-56, 725 P2d 312 (1986), and determined, among other things, that defendant's acts against A were similar to his acts against B, and that the evidence about A was being offered for a nonpropensity purpose, was not "overly inflammatory," and could be

presented without undue confusion, distraction, or unreasonable delay.

Later, but also before trial, the state filed a written motion to permit it to introduce evidence of defendant's uncharged acts of sexual abuse against B in Umatilla County. The state asserted that that evidence would "allow the jury to see a clear, cohesive picture of how defendant perpetuated the abuse for which he ha[d] been indicted in Clatsop County." That evidence, the state represented, included the acts of abuse to which B had testified at the prior hearing and also the fact that defendant had told B that, if she ever told anyone about the abuse, he would hurt her, and that he had been physically abusive to her.

Defendant opposed the state's motion and asserted that it was untimely and required a hearing. The trial court responded that it had assumed, from the prior hearing, that the evidence of the uncharged abuse of B would be admitted to explain to the jury "the path leading up to" the charged crimes, but that the evidence also was admissible for the same reasons that the court had articulated in permitting the evidence of defendant's abuse of A.

At trial, both A and B testified consistently with their pretrial testimony. At the close of evidence, the court instructed the jury that it could consider the uncharged abuse of A only as evidence of defendant's intent in abusing B. The court did not give the jury a limiting instruction regarding the purposes for which it could consider the uncharged abuse of B.

The jury convicted defendant of eight of the 12 charges. Defendant appealed to the Court of Appeals and argued that the trial court had erred in admitting the evidence of the uncharged abuse of both A and B as nonpropensity evidence under OEC 404(3). While the case was pending before that court, this court decided *State v. Williams*, 357 Or 1, 346 P3d 455 (2015).

In *Williams*, this court considered the interplay between three evidentiary rules: OEC 404(3), OEC 404(4), and OEC 403. OEC 404(3) makes other acts evidence

*inadmissible* to prove a defendant's character or propensity to commit the charged crime. It provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

OEC 404(3).

OEC 404(4) was enacted after OEC 404(3). It makes relevant other acts evidence *admissible* in criminal actions, subject to specified exceptions. It provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) [OEC 406 through 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

OEC 404(4).

In *Williams*, the court recognized the conflict between those two rules and held that the "legislature intended OEC 404(4) to supersede OEC 404(3) in criminal cases," and to permit the admission of other acts evidence to prove a defendant's propensity to commit a charged crime of sexual abuse. 357 Or at 15. The court also concluded, however, that OEC 404(4)(a) made the admission of such evidence subject to specified evidentiary rules, including OEC 403. *Id.* at 19. OEC 403 permits a court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. It provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

jury, or by considerations of undue delay or needless pre-
sentation of cumulative evidence."

OEC 403. In *Williams*, the court reasoned that OEC 404(4)(a)
made OEC 403 applicable "to the extent required by the
United States Constitution," and concluded that, "in a pros-
ecution for child sexual abuse, the [United States Supreme]
Court would hold that subjecting proffered 'other acts' evi-
dence to OEC 403 balancing is a due process requirement."
*Id*. at 15-18. That balancing, the court explained, was bal-
ancing to "determine whether the probative value of the
evidence is outweighed by the risk of unfair prejudice." *Id*.
at 19. The court expressly reserved, however, the question
whether the required balancing was "traditional," or "sub-
constitutional," OEC 403 balancing, or some other, more
limited, "due process" balancing. *Id*. at 19 n 17.[4]

In light of this court's decision in *Williams*, the par-
ties in this case filed supplemental briefs in the Court of
Appeals. Considering OEC 404(4) to be the operative evi-
dentiary rule, the parties squared off about whether the
balancing that OEC 404(4) requires is "traditional" balanc-
ing under OEC 403, or "due process" balancing, requiring
the exclusion of other acts evidence only when its admission
would render the trial fundamentally unfair and thereby
violate due process.

The Court of Appeals agreed with defendant that
OEC 404(4) requires "traditional" OEC 403 balancing and
then took up the legal issue that defendant had raised in
his initial opening brief about whether the trial court had
correctly conducted that balancing. *Baughman*, 276 Or
App at 764-65. As noted, the trial court had considered the
uncharged abuse of A to be relevant for three nonpropen-
sity purposes and had carried out the required balancing
with those purposes in mind. The Court of Appeals deter-
mined that the challenged evidence was relevant for only
one of those purposes—to prove defendant's intent under
the *Johns* analysis—but not for the other two purposes—to

---

[4] The court did not have to decide that question in *Williams*, because it deter-
mined that the trial court had correctly admitted the evidence. 357 Or at 23.
Applying a more circumscribed, "due process," balancing would not have made a
difference in the result.

prove identity and to bolster the victim's credibility.[5] *Id*. at 771. The court reasoned that evidence of defendant's uncharged acts was not sufficiently novel or unique to be relevant to identity, *id*. at 768, and that "the purpose of bolstering the victim's credibility is merely propensity by a different name," *id*. at 772. Therefore, the court explained, the trial court had not correctly considered the "quantum of probative value of the evidence" when it conducted the required balancing under OEC 403 and had erred in admitting the other acts evidence. *Id*. (internal quotation marks omitted). The Court of Appeals reversed defendant's convictions and remanded the case for a new trial. *Id*.

The state petitioned for review in this court, renewing its argument that the Court of Appeals was required to review the trial court's admission of the challenged evidence, not to determine whether the trial court had correctly engaged in "traditional" balancing under OEC 403, but, instead, to determine whether the admission of that evidence rendered the trial fundamentally unfair and thereby violated due process. The state also asserted that, even if traditional balancing was what was required, we should remand for such balancing, not necessarily for a new trial. We allowed the state's petition.

## II.   ANALYSIS

In this court, the state raises an issue that we expressly reserved in *Williams*—the nature of the balancing that must be conducted under OEC 403. To understand the state's argument, a more complete review of this court's opinion in *Williams* is necessary.

In *Williams*, the court began, as noted, by considering the relationship between OEC 404(3) and OEC 404(4). 357 Or at 12. The court recognized the conflict in the two subsections and concluded that, in criminal actions, OEC 404(4) supersedes OEC 404(3). *Id*. at 15. The court then considered the relationship between OEC 404(4) and OEC 403 and concluded that OEC 404(4) makes the admission of

---

[5] The Court of Appeals did not discuss the other nonpropensity purpose on which the trial court had relied for admission of the uncharged abuse of B—to provide context for the evidence of the charged abuse of B.

other acts evidence subject to OEC 403 because the United State Constitution requires the application of that rule. *Id*. at 18-19. The court engaged in the reasoning that follows.

The common law precluded or limited the admission of other acts evidence to establish a defendant's character and propensity to act accordingly. The general rule, as this court stated in *State v. Baker*, 23 Or 441, 442-43, 32 P 161 (1893), was that "no enlightened system of jurisprudence" would permit the admission of such evidence:

> "The general rule is unquestioned that evidence of a distinct crime unconnected with that laid in the indictment, cannot be given in evidence against the prisoner. Such evidence tends to mislead the jury, creates a prejudice against the prisoner, and requires him to answer a charge for the defense of which he is not supposed to have made preparation. And while, as Lord Campbell says, 'it would be evidence to prove that the prisoner is a very bad man, and likely to commit such an offense' (*Reg. v. Oddy*, 5 Cox C C 210), under no enlightened system of jurisp[r]udence can a person be convicted of one crime on proof that he has committed another."

When state and federal jurisdictions adopted rules to govern the admission of such evidence, those rules "often reflected that common-law tradition and precluded the admission of 'other acts' to prove propensity." *Williams*, 357 Or at 9. However, when Congress adopted FRE 413 and FRE 414 in 1994, that changed "as to cases in which a defendant is charged with sexual assault or child molestation." *Id*. at 10. The federal rules of evidence now permit the admission of relevant other acts evidence in such cases, and federal courts were asked to interpret those rules and to decide, among other things, whether they are subject to FRE 403, a corollary to OEC 403, and whether they comport with due process. *Id*. at 10-11.

While those questions were pending in the lower federal courts, the Oregon Legislative Assembly adopted OEC 404(4), which, like FRE 413 and FRE 414, permits the admission of other acts evidence. *Id*. at 15. The Oregon Legislative Assembly recognized the unsettled state of federal law by expressly making OEC 404(4) subject to OEC 403 "to the extent required by the United States Constitution."

OEC 404(4)(a); *Williams*, 357 Or at 15-16. The legislature "deferred to the courts to determine whether the federal constitution requires the application of OEC 403," and that was the question that was before the court in *Williams*:

> "Because the United States Supreme Court is the final arbiter of federal constitutional requirements, we must endeavor to determine how that Court would decide the question that the parties present: Whether the Due Process Clause requires the application of OEC 403."

*Id.* at 16.

To answer that question, the court looked first to federal court decisions that had addressed the constitutionality of FRE 413 and FRE 414. The courts that had considered the matter had held that evidence admitted under those rules remained subject to balancing under FRE 403 and that, as a result, those rules did not violate the Due Process Clause. *Id.* at 11. In *U.S. v. LeMay*, 260 F3d 1018, 1026 (9th Cir 2001), the court explained that,

> "[a]s long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded."

That reasoning is consistent with the reasoning of the United States Supreme Court in *Dowling v. United States*, 493 US 342, 352-54, 110 S Ct 668, 107 L Ed 2d 708 (1990). In *Dowling*, the defendant had argued that the admission of other acts evidence to prove identity under FRE 404(b) violated his right to due process because it created a constitutionally unacceptable risk that the jury would convict him on an improper basis. *Id.* at 352-53. The Court disagreed, concluding that "the trial court's authority to exclude potentially prejudicial evidence adequately addresses this possibility." *Id.* at 353.

The federal court decisions did not, however, answer the question before the court in *Williams*. They told the court only that an evidentiary rule that the federal courts deemed applicable and that required trial courts to balance the probative value and prejudicial effect of other acts evidence was *sufficient* to satisfy the Due Process Clause; they did not tell the court that such a rule was *necessary*.

Consequently, the court turned next to "historical practice" to determine whether OEC 403 is an evidentiary rule that is so fundamental that it is required by due process.[6] The court observed that, in "*LeMay*, [260 F3d at 1025,] the Ninth Circuit considered the 'historical practice' prohibiting the use of 'other acts' to prove the charged crime and concluded that 'the general ban on propensity evidence has the requisite historical pedigree to qualify for constitutional status.'" *Williams*, 357 Or at 17. The court also thought it prudent, however, as the Ninth Circuit had in *LeMay*, to consider the principles that animate the Due Process Clause. Outlining those principles, the court said that

> "the Supreme Court has explained that the admission of evidence that is so extremely unfair that it violates 'fundamental conceptions of justice' violates the Due Process Clause. *United States v. Lovasco*, 431 US 783, 790, 97 S Ct 2044, 52 L Ed 2d 752 (1977). The Supreme Court also has explained that '[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.' *Old Chief v. United States*, 519 US 172, 180, 117 S Ct 644, 136 L Ed 2d 574 (1997). In *Old Chief*, the Court recognized that such improper grounds include 'generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged.' *Id.* Although the Court was not deciding a constitutional issue in *Old Chief*, its discussion demonstrates how the Court characterizes the prejudice posed by 'other acts' evidence. As the Court recognized in *Dowling*, 493 US at 352, the violation of due process that may result from such unfair prejudice is obviated by the application of a rule of evidence that permits a court to consider the risk of prejudice and exclude the evidence when appropriate."

*Id*. at 18. Accordingly, the court concluded that, "in a prosecution for child sexual abuse, the [Supreme] Court would hold that subjecting proffered 'other acts' evidence to OEC 403 balancing is a due process requirement" and, therefore, that the federal constitution required that, on request, trial

---

[6] *See Montana v. Egelhoff*, 518 US 37, 43, 116 S Ct 2013, 135 L Ed 2d 361 (1996) ("Our primary guide in determining whether the principle in question is fundamental is, of course, historical practice.").

courts conduct OEC 403 balancing. *Id*. at 18-19. The court summarized its reasoning as follows:

> "In such prosecutions, the historical record may not definitively establish that it is always improper to admit 'other acts' evidence to prove propensity, but it at least demonstrates a historical concern for the prejudice that such evidence poses and the importance that balancing plays in protecting against the harm that may result from its admission. In our view, the only way that a court can ensure that the admission of 'other acts' evidence is not unfairly prejudicial and a violation of 'fundamental concepts of justice' is to conduct OEC 403 balancing. We therefore hold that that balancing is required by the Due Process Clause. Even if due process does not categorically prohibit the admission of 'other acts' evidence to prove propensity in prosecutions for child sexual abuse, it at least requires that, on request, trial courts determine whether the probative value of the evidence is outweighed by the risk of unfair prejudice."

*Id*.

In reaching that conclusion, the court set aside for another day the question that the state raises here; *viz*., whether the balancing under OEC 403 is "traditional" or "subconstitutional" balancing, or, as the state posits, "due process" balancing that precludes the admission of propensity evidence under OEC 404(4) only if its admission would render the trial fundamentally unfair as a matter of law. *Id*. at 19 n 7. Today is that day.

The state begins its argument with the text of OEC 404(4), which, as noted, provides:

> "In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:
>
> "(a) [OEC 406 through 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];
>
> "(b) The rules of evidence relating to privilege and hearsay;
>
> "(c) The Oregon Constitution; and
>
> "(d) The United States Constitution."

Thus, OEC 404(4) provides that relevant other acts evidence is admissible except as otherwise provided by certain evidentiary rules, including, "to the extent required by the United States Constitution," OEC 403.

The state contends that, in that quoted phrase, the word "extent" is synonymous with "degree." Thus, the state argues, OEC 404(4)(a) makes *OEC 403* applicable only to the degree that the federal constitution requires it; that is, when *the evidence* is so unfairly prejudicial that its admission would render a trial fundamentally unfair.

This court went a long way toward answering that argument when it decided, in *Williams*, 357 Or at 19, that OEC 404(4)(a) makes OEC 403 applicable, and OEC 403 provides a different standard for determining the admissibility of evidence than the one for which the state argues. As noted, OEC 403 provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

OEC 404(4)(a) provides that relevant evidence is admissible except as provided by specified rules of evidence and provides that one rule—OEC 403—is included in that list of rules only to the extent that it—*the rule*—is required by the constitution. By referencing that rule, the legislature referenced the legal standard of admissibility that the rule sets forth, not another legal standard. The legislature did not make *evidence* admissible "*to the extent required by the United States Constitution*"; rather, it made *evidence* admissible *except as otherwise provided* by specified rules of evidence, including, *if constitutionally required*, OEC 403. Because this court decided, in *Williams*, that the application of OEC 403 is constitutionally required, the legal standard that that rule provides is the applicable standard.

Other context supports that interpretation. First, OEC 404(4)(a) makes the admission of other acts evidence subject to rules of evidence in addition to OEC 403—OEC 406 through 412—and OEC 404(4)(b) makes the admission of other acts evidence subject to the rules

of evidence relating to privilege and hearsay. The legislature apparently intended that those rules apply by their terms, and it is likely that the legislature also intended that, if OEC 403 is applicable, it apply according to its terms.

Second, a different part of the statute, OEC 404(4)(d), provides that relevant other acts evidence is admissible except as provided by "[t]he United States Constitution." The state is correct that the Due Process Clause of the United States Constitution requires the exclusion of evidence that, if admitted, would render a trial fundamentally unfair. *See U.S. v. Morena*, 547 F3d 191, 194-97 (3d Cir 2008) (in defendant's trial for felon in possession of a firearm, admission of evidence of defendant's uncharged drug use was so prejudicial as to violate due process); *McKinney v. Rees*, 993 F2d 1378, 1385-86 (9th Cir 1993), *cert den*, 510 US 1020 (1993) (where murder victim's throat slit, evidence of defendant's interest in knives so inflammatory and of so little relevance as to render trial fundamentally unfair in violation of due process). Consequently, other acts evidence that would render a trial fundamentally unfair must be excluded under OEC 404(4)(d), as a matter of law. But that does not mean that OEC 404(4)(a) incorporates that standard. In fact, the state's interpretation of OEC 404(4)(a) to require exclusion of evidence only when exclusion would be required under OEC 404(4)(d) would render OEC 404(4)(d) redundant, "a consequence that this court must avoid if possible." *Blachana, LLC v. Bureau of Labor and Industries*, 354 Or 676, 692, 318 P3d 735 (2014).

The state acknowledges as much, but contends that the legislature included paragraph (a) in OEC 404(4) to provide the court with a "procedural mechanism" to consider whether other acts evidence should be excluded as violative of due process. The problem with that argument is that OEC 403 is not a "procedural mechanism"; rather, it is, as noted, a legal standard by which the admissibility of evidence is determined. By referring to OEC 403, the legislature referred to the legal standard that it sets forth. Had the legislature intended to impose some other, narrower, "due process" standard for evaluating the admissibility of evidence, it would have set out that standard, or referred to

the constitution as it did in OEC 404(4)(d); it would not have referred to OEC 403.

The state also cites, as context, this court's decision in *State v. Moore/Coen*, 349 Or 371, 245 P3d 101 (2010), and contends that it forecloses any argument that OEC 404(4)(a) must be interpreted to permit ordinary balancing. We disagree. The state is correct that the defendant in *Moore/Coen* assumed that OEC 404(4) precluded balancing under OEC 403 and challenged its constitutionality on that basis. The defendant argued that OEC 404(4) was unconstitutional on its face or as applied because it favored only the prosecution and made the conviction of a defendant more likely. *Id.* at 387-88. The court rejected the defendant's facial challenge because OEC 404(4) preserves "traditional standards of relevancy" and precludes admission of evidence that would "violate state and federal constitutional standards." *Id.* at 389. The court also rejected the defendant's as-applied challenge because, in that case, the admission of other acts evidence for a *noncharacter* purpose—to establish an element of a crime—did not offend the constitution. *Id.* at 391-92. In reaching those conclusions, the court did not quarrel with defendant's assumption about the applicability of OEC 403, but neither did it adopt it. Nor did the court distinguish between OEC 403 balancing and some narrower form of "due process" balancing. *See Williams*, 357 Or at 19 n 17 (explaining that *Moore/Coen* did not distinguish between "traditional" and "due process" balancing). *Moore/Coen* does not preclude an interpretation of OEC 404(4)(a) that requires a trial court to engage in balancing under OEC 403 according to its terms.

The legislative history of OEC 404(4) also provides little, if any, support for the state's interpretation of that rule. OEC 404(4) was part of Senate Bill (SB) 936 (1997). *Id.* at 14. The bill's opponents understood SB 936 as eliminating the restrictions imposed by OEC 404(3) on the admission of prior acts evidence in criminal cases, and they expressed concern that the bill could be unconstitutional. *Id.* at 15 (citing Tape Recording, Senate Committee on Crime and Corrections, SB 936, Mar 21, 1997, Tape 43, Side A (statement of Jim Arnesen, Oregon Criminal Defense Lawyers Association (OCDLA))). Mike Phillips, a member of the

Board of Governors of the Oregon State Bar, also testified that the bar had concerns about the provision of SB 936 that would become OEC 404(4). House Committee on Judiciary, Subcommittee on Criminal Law, SB 936, Apr 17, 1997, Tape 88, Side A. Phillips stated that he believed that OEC 404(4) would have the effect that

> "evidence of someone's prior acts may be used to prove what their character is for the purpose of showing that they acted in conformance with that character now. That is, essentially, if you are a bad person[,] it is more likely you committed this crime. That repeals a part of the evidence law of the Anglo-American system that's been in existence since 1695."

*Id*. Special Counsel to the Attorney General Mark Gardner, who was involved in drafting SB 936, responded,

> "There is a balancing test that is required under the U.S. Constitution. Mr. Phillips should review his constitutional law because that is required[,] that a trial judge balance the probative evidence versus the prejudicial effect before the judge constitutionally can admit evidence in a case. \*\*\* *What SB 936 does, it puts into statute the fact that we are still going to have a balancing test, because that's what [OEC 403] presently requires*."

*Id*. at Tape 89, Side A (emphasis added). Like Gardner, Jim Arnesen, a representative of the OCDLA, understood that evidence introduced under OEC 404(4) would be subject to traditional OEC 403 balancing: "[T]he only limitation on keeping that evidence out when the state wants to offer it will be the Federal Constitution and Rule 403 with respect to prejudice." Tape Recording, Senate Committee on Crime and Corrections, SB 936, Mar 21, 1997, Tape 43, Side A (statement of Jim Arnesen, OCDLA).

That history indicates that those involved in the drafting of SB 936 believed that OEC 403 would apply to ensure that OEC 404(4) would not violate the United States Constitution. It also evidences an assumption that OEC 403 would be applied by trial courts to assess whether the probative value of other acts evidence is substantially outweighed by the danger of unfair prejudice, not to determine whether, as a matter of law, admission of such evidence would render the trial fundamentally unfair.

Considering the text, context, and legislative history of OEC 404(4), we are persuaded that, in enacting that rule of evidence, the legislature intended trial courts to conduct the balancing required by OEC 403 according to its terms. Under OEC 404(4)(a) and OEC 403, trial courts may exclude evidence, in the exercise of their discretion, when they determine that its probative value is substantially outweighed by the danger of unfair prejudice. *See State v. Knight*, 343 Or 469, 483, 173 P3d 1210 (2007) (explaining that court's exclusion of evidence under OEC 403 requires exercise of discretion). Under OEC 404(4)(d), trial courts also must exclude evidence, as a matter of law, that would render a trial fundamentally unfair and violate the Due Process Clause. *See State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000) (explaining that, when only one legally correct outcome exists, decision is legal in nature and not exercise of discretion). OEC 404(4)(a) and OEC 404(4)(d) thus provide two independent bases for excluding other acts evidence.[7]

That does not mean, however, that the balancing that a trial court conducts under OEC 403 will be devoid of due process considerations. As this court explained in *Williams*, it is the Due Process Clause that requires the application of OEC 403. 357 Or at 18. The common-law underpinnings of that rule, the Supreme Court's explanation of the meaning of the term "unfair prejudice" in *Old Chief*, and its description of the role that balancing plays in *Dowling* all remind us that OEC 403 balancing must be conducted to preclude the admission of "concededly relevant evidence" that has the capacity "to lure the factfinder into declaring guilt on a ground different from proof specific to

---

[7] It is not entirely clear to us that "traditional" balancing and "due process" balancing are as different as the parties assume that they are. We recognize that "traditional" OEC balancing requires an exercise of discretion, *Knight*, 343 Or at 483, and that the rule for which the state advocates would require exclusion of other acts evidence as a matter of law. However, both standards are intended to ensure a trial that is fundamentally fair. If a trial court were to determine, in the exercise of its discretion, that the probative value of other acts evidence was substantially outweighed by the danger of unfair prejudice, but, nevertheless, were to admit that evidence, that might well result in a trial that an appellate court would deem fundamentally unfair. We think it important to note that, as the state acknowledged at oral argument in this case, no court, state or federal, has distinguished between the balancing required under codified evidentiary rules and some narrower "due process" balancing.

the offense charged." *Old Chief*, 519 US at 180. That is why we said, in *Williams*, that,

> "when 'other acts' evidence 'goes only to character and there are *no* permissible inferences the jury may draw from it,' it is more likely that the evidence will be excluded. Such evidence generally will have little or no cognizable probative value, and the risk that the jury may conclude improperly that the defendant had acted in accordance with past acts on the occasion of the charged crime will be substantial."

357 Or at 20 (emphasis in original).[8]

### III.   APPLICATION

The final issues for our analysis in this case are whether the trial court erred in admitting other acts evidence, and, if so, the proper remedy on remand. As explained, the trial court analyzed the admissibility of the other acts evidence that the state proffered under OEC 404(3) and OEC 403, and the Court of Appeals held that the trial court had erred with respect to the probative value that it assigned to that evidence. *Baughman*, 276 Or App at 771-72. On review, the state asks that we examine that evidence to determine whether it rendered the trial fundamentally unfair and does not independently argue that the Court of Appeals was wrong in its "traditional" OEC 403 analysis. However, the state argues, any remand to the trial court should be a limited remand for OEC 403 balancing and not necessarily for a new trial. To assess that argument, it is helpful to review the analytical framework that a trial court should use to assess the admissibility of other acts evidence.

In setting out that framework, it also is helpful to clarify what we meant when we said, in *Williams*, that, in criminal cases, OEC 404(4) supersedes OEC 404(3). 357 Or at 15. In criminal cases, OEC 404(4) makes other acts evidence *admissible* to prove a defendant's character, subject to

---

[8] We caution that this court has suggested, but not yet decided, that the federal constitution may, as a matter of law, prohibit the admission of other acts evidence to prove propensity in a criminal case in which the defendant is charged with crimes other than child sexual abuse. *See Williams*, 357 Or at 17 (noting that, if defendant had been charged with crimes other than child sexual abuse, court might be persuaded that due process precludes the admission of other acts evidence).

specified rules of evidence and the state and federal consti-
tutions. Consequently, OEC 404(4) supersedes the first sen-
tence of OEC 404(3), which provides that "[e]vidence of other
crimes, wrongs or acts is *inadmissible* to prove the character
of a person in order to show that the person acted in confor-
mity therewith." (Emphasis added.) However, OEC 404(4)
does not supersede the second sentence of OEC 404(3),
which provides that other acts evidence "may be admissi-
ble for other purposes, such as proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of
mistake or accident." If other acts evidence is not proffered
to prove a defendant's character, but instead is offered for a
nonpropensity purpose, then analysis under OEC 404(4) is
unnecessary; the evidence "may be admissible" under the
second sentence of OEC 404(3).

Thus, in *State v. Turnidge*, 359 Or 364, 440-42, 374
P3d 853 (2016), this court began by considering whether the
other acts evidence that the state adduced was relevant for
a nonpropensity purpose under OEC 404(3)—there, as "true
plan" evidence. After determining that it was, the court then
turned to OEC 403 and considered whether the trial court
had correctly conducted the balancing required by that rule.
*Id*. at 442. The court saw no reason to consider whether the
evidence also was admissible under OEC 404(4), *id*. at 433-
34, and affirmed the trial court's ruling, *id*. at 445-46.

Trial courts also should follow that two-step analy-
sis. When a party objects to the admission of other acts
evidence, a trial court first should determine whether the
proffered evidence is relevant for one or more nonpropensity
purposes, under OEC 404(3). If it is, then the court should
determine, at step two, whether the probative value of that
evidence is substantially outweighed by the danger of unfair
prejudice under OEC 403.[9] If the trial court determines
that the evidence is relevant for a nonpropensity purpose
under OEC 404(3) and admissible under OEC 403, then
it need not determine whether the evidence also is admis-
sible under OEC 404(4) and OEC 403. However, if a trial

---

[9] We do not decide, in this case, whether, in addition to objecting to the
admission of such evidence, a party also must explicitly seek balancing under
OEC 403.

court determines that proffered evidence is not relevant for a nonpropensity purpose, then it must determine whether that evidence nevertheless is otherwise relevant under OEC 404(4) and, at step two, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, under OEC 403.

A trial court's decision, at step one, about whether other acts evidence is relevant for a nonpropensity purpose, will have a significant effect on whether the trial court admits that evidence at step two. At one end of the spectrum, other acts evidence that is relevant for a nonpropensity purpose under OEC 404(3) generally will be admissible under OEC 403 as long as the particular facts of the case do not demonstrate a risk of unfair prejudice that substantially outweighs the probative value of the evidence. *Williams*, 357 Or at 19. At the other end of the spectrum, when evidence is relevant only to prove a defendant's character, more significant due process concerns are implicated, and, generally, the danger of unfair prejudice will substantially outweigh the probative value of the evidence. *Id.* at 20.

In this case, the trial court began correctly at step one of the analysis and considered whether the evidence of defendant's uncharged abuse of A was relevant for a nonpropensity purpose under OEC 404(3). The court agreed with the state that the other acts evidence regarding A was relevant for three nonpropensity purposes—to prove identity and intent, and to bolster the credibility of the victim.[10] Giving that evidence weight for that purpose, the court

_____

[10] As noted, the trial court also admitted evidence of defendant's uncharged abuse of B for the same three nonpropensity purposes. For the reasons that we explain in the text, those purposes are not relevant, nonpropensity purposes. However, with respect to B, the trial court also mentioned a fourth nonpropensity purpose for admitting the evidence—to establish context for the charged acts— and the state argues before this court that that evidence is relevant for a fifth nonpropensity purpose—to prove that defendant had a sexual predisposition for the victim. *See State v. McKay*, 309 Or 305, 308, 787 P2d 479 (1990) (holding prior acts evidence involving same victim admissible to "demonstrate the sexual predisposition this defendant had for this particular victim"). We express no opinion about whether the evidence of defendant's uncharged abuse of B is relevant context or predisposition evidence, whether that evidence is correctly viewed as relevant for a nonpropensity purpose under OEC 404(3), or what conclusion the trial court might reach, on remand, in evaluating the admissibility of that evidence under OEC 403.

admitted it under OEC 403, and defendant appealed to the Court of Appeals.

An appellate court reviews a trial court's determination of whether proffered other acts evidence is relevant for a nonpropensity purpose under OEC 404(3) for errors of law. *See State v. Pitt*, 352 Or 566, 582, 293 P3d 1002 (2012) (trial court committed legal error in admitting what amounted to evidence of propensity for nonpropensity purposes). In contrast, an appellate court reviews a trial court's determination of whether the probative value of the proffered evidence substantially outweighs the danger of unfair prejudice under OEC 403 for abuse of discretion. *Knight*, 343 Or at 483-84.

In this case, the Court of Appeals correctly considered whether the trial court had committed a legal error in its determination of whether the proffered evidence was relevant for a nonpropensity purpose. The court reasoned that the challenged evidence was relevant for only one nonpropensity purpose—to prove defendant's intent under a *Johns* analysis—and not for the other two nonpropensity purposes on which the trial court had relied. *Baughman*, 276 Or App at 770-72. In this court, the state does not argue that defendant's abuse of A was relevant to prove defendant's intent or for any other nonpropensity purpose. For the reasons that follow, we conclude that defendant's abuse of A was not relevant for the three nonpropensity purposes that the trial court identified.

First, as the Court of Appeals held, under *Pitt*, 352 Or at 576-78, the challenged evidence regarding A is neither relevant to show identity nor admissible for a nonpropensity purpose of bolstering the victim's credibility. *Baughman*, 276 Or App at 767-69. Like *Pitt*, this is not a case in which the state seeks to prove defendant's identity based on *modus operandi*. 352 Or at 577. And, as in *Pitt*, an argument that the evidence is admissible to bolster the victim's testimony is no more than a propensity argument by another name. *Id*. at 577-78.

Second, although the Court of Appeals considered the evidence of defendant's abuse of A to be relevant to his

intent to abuse B under *Johns*, this court explained the limited application of *Johns* in *Turnidge*. Specifically, the doctrine of chances, on which *Johns* is based, does not apply in every case in which the state must prove that a defendant acted intentionally. 359 Or at 435-36. Rather, under the doctrine of chances, the admissibility of the evidence depends on the proposition that multiple instances of similar conduct are unlikely to occur accidentally. *State v. Leistiko*, 352 Or 172, 182, 282 P3d 857 (2012). But, where a defendant does "not advance any sort of defense (such as inadvertence or self-defense) that customarily would be countered by a doctrine of chances theory of relevancy," and the state does not offer other acts evidence "to prove 'intent' in the 'absence of mistake' sense of the term," then the doctrine of chances is inapplicable, and other acts evidence is not admissible to prove a defendant's intent on that basis. *Turnidge*, 359 Or at 437.

Here, as in *Turnidge*, defendant did not raise mistake or inadvertence as a defense. Instead, defendant argued that the charged acts had not occurred. And, although other acts evidence can be relevant to a defendant's intent on theories other than the doctrine of chances, *id*. at 436, the state does not advance any such theory in this case. We therefore conclude that the evidence of defendant's abuse of A was not relevant for any nonpropensity purpose under OEC 404(3) and that the trial court erred in considering it for such purposes.

That error at step one of the analysis significantly affected the trial court's decision at the second step of its analysis and the court's admission of the challenged evidence. The reason, as noted, is that evidence admitted for a nonpropensity purpose generally is admissible under OEC 403, while evidence admitted solely to prove a defendant's character generally is not. The trial court erred, and, as the state recognizes, the trial court's admission of that evidence was not harmless. We cannot conclude that "there is little likelihood" that the evidence that defendant not only sexually abused B, but also abused A, affected the jury's verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (error requires reversal unless reviewing court can conclude that

there was little likelihood that trial court's ruling affected jury's verdict).[11]

That does not resolve the final issue that the state raises, however. The state argues that, when this court determines that a trial court has committed a "procedural" error, such as that committed in this case, the proper remedy is first to allow the trial court correctly to conduct an appropriate analysis under OEC 404 and OEC 403. Then, if the court determines that challenged other acts evidence is admissible, a new trial will not be necessary. In the past, the state submits, this court has ordered similar limited remands to make unresolved determinations or to redo procedurally flawed determinations. For that proposition, the state cites *State v. Paulson*, 313 Or 346, 352-53, 833 P2d 1278 (1992) (case remanded to trial court for evidentiary hearing on whether police officers received consent to enter apartment and whether, alternatively, evidence would have inevitably been discovered); *State v. McDonnell*, 310 Or 98, 106-07, 794 P2d 780 (1990) (case remanded for evidentiary hearing to determine how prosecutor would have exercised judgment and discretion on basis of proper criteria and facts that existed at time he declined to enter into plea agreement); and *State v. Probst*, 339 Or 612, 629-30, 124 P3d 1237 (2005) (case remanded to trial court for defendant to put on evidence establishing that absence of counsel resulted in involuntary guilty plea).

Defendant responds that, if we were to accept the state's argument, we would be abdicating our role in determining whether a trial court's error is harmless and ceding it to the trial court. Defendant contends that, when a trial court errs in analyzing other acts evidence and revises its analysis on remand, retrial always will be necessary. For instance, defendant asserts, if a trial court were to admit such evidence for a different purpose than it did in the

---

[11] The Court of Appeals considered the trial court's error to be a violation of defendant's due process rights under the United States Constitution. *Baughman*, 276 Or App at 772. For that reason, the court applied the federal harmless error test and determined that it could not confidently say that the error was harmless beyond a reasonable doubt. *Id*. Although we hold that the application of OEC 403 is constitutionally required, we consider the trial court's error to be a violation of that evidentiary rule, and we therefore apply our state harmless error test.

original trial, that would affect the parties' trial strategies and arguments, and the court's jury instructions. In addition, defendant contends, if a trial court is given an opportunity to retrospectively review its prior decision to receive evidence, the court will have an incentive to make the same decision and avoid a new trial.

Defendant's first argument is based on a misunderstanding of how an appellate court determines whether a trial court's error in analyzing the admissibility of other acts evidence was harmless. When a trial court errs in determining that other acts evidence is relevant for a non-propensity purpose, that decision necessarily affects the trial court's weighing and admission of that evidence, and we, as an appellate court, can consider the effect of that evidence and whether its admission was harmless. What we cannot do, however, is determine what the trial court will do when it corrects such an analytical error on remand. This court's decision in *State v. Cartwright*, 336 Or 408, 85 P3d 305 (2004), demonstrates why remand for that purpose is necessary.

In *Cartwright*, this court held that the trial court had erred in failing to require the state to produce recordings that, the defendant contended, could contain impeaching witness statements. This court held that the trial court's error was not harmless under *Davis* because the defendant did not have the benefit of those recordings and "cross-examining those witnesses on their prior statements could have been a very effective method of undermining the state's case." *Id.* at 420. Under those circumstances, the court said, it could not conclude that the trial court's decision "had little likelihood of affecting the verdict." *Id.* (citing *Davis*, 336 Or at 32). Rather than remanding for retrial, however, the court remanded for production of the recordings. Recognizing that the recordings might not contain impeaching material, the court granted the defendant an opportunity for review and a trial court hearing. After a hearing, the court said, the trial court could order a new trial, or, alternatively, make findings that "defendant's inability to use the materials could not have affected the verdict," and reinstate the original judgment of conviction. *Id.* at 421.

Similarly, in this case, we are not in a position to know whether the trial court will exclude or admit other acts evidence when it reconsiders the state's proffer on remand. If the trial court excludes the evidence, then a new trial certainly will be necessary. If, however, the trial court again admits the evidence, then the question whether a new trial is required is more difficult.

Defendant is correct that the purposes for which a trial court admits other acts evidence may affect the parties' trial strategies and arguments, and the court's jury instructions, and, therefore, that a new trial may be required even if evidence previously admitted is again received. Defendant also is correct that judges are human and may be influenced by their prior decisions and concerns for efficient judicial administration. But recognizing and nevertheless putting aside such concerns, and fairly assessing how to ensure a fair trial for all parties, is the daily stuff of our trial courts. In this circumstance, we think it best to leave it to those courts to determine, on a case-by-case basis, whether, after conducting a correct analysis under OEC 404 and OEC 403, other acts evidence should again be received and whether a new trial is required or appropriate. A trial court's decision about the appropriate proceedings on remand will depend, not on whether the trial court's error in the original case was "procedural" or "substantive," but on the facts of the original case, the arguments that the parties made, and the instructions that the court gave. Even if a trial court admits, on remand, the same evidence that it received in the original trial, the court may order a new trial if necessary or appropriate.

In this case, the trial court erred in admitting the evidence of defendant's abuse of A for what it considered to be three nonpropensity purposes.[12] On remand, the state

---

[12] The trial court also erred in admitting the evidence of defendant's uncharged abuse of B for those three nonpropensity purposes. As noted, the trial court also admitted that evidence for a fourth purpose—to provide context—and the state argues that the evidence is relevant for a fifth purpose—to demonstrate defendant's sexual predisposition for the victim. Because we reverse and remand for further proceedings, the trial court will have an opportunity to consider the parties' arguments about whether that evidence is correctly viewed as relevant for a nonpropensity purpose under OEC 404(3), and to conduct balancing under OEC 403.

will be entitled to make new arguments about the purposes, if any, for which proffered other acts evidence is relevant, and the trial court will have to determine whether the cognizable probative value of that evidence is substantially outweighed by the danger of unfair prejudice that it poses. No matter what decision the court makes, a new trial may be required to allow the parties to make new arguments, and the court to give new instructions, to the jury. For example, in the original trial, the trial court instructed the jury that it could consider defendant's abuse of A to prove defendant's intent in abusing B. If the court admits proffered evidence for a different purpose on remand, different instructions may be required. The trial court will be in the best position to assess the need for a new trial after it has determined the purposes for which the challenged evidence is relevant under OEC 404(3), and, if argued, under OEC 404(4), and whether to admit it. We leave it to the trial court to determine the nature of the proceedings that are necessary or appropriate on remand.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings, consistently with this opinion.